(No. 38343.—)

WILLIAM CHMELIK, Appellant, *vs.* THOMAS VANA, Appellee.

*Opinion filed September 29, 1964.*

FRED LAMBRUSCHI, ADAM STILLO, and JOSEPH STILLO, all of Chicago, (HERBERT P. VELDENZ, and VERA E. CUTHBERT, of counsel,) for appellant.

Mr. JUSTICE DAILY delivered the opinion of the court: This is an appeal from a judgment of the circuit

court of Cook County holding that the Illinois Workmen's Compensation Act was a bar to a common-law action brought by plaintiff, William Chmelik, to recover for personal injuries allegedly resulting from the negligence of Thomas Vana, the defendant. Constitutional questions raised and passed upon in the trial court give us jurisdiction to entertain the direct appeal.

Undisputed facts reveal that plaintiff and defendant were both employees of the Speedway Manufacturing Company at a plant in northern Illinois, and that both men customarily drove to and from work and parked their vehicles in a parking lot provided by their employer for the use of its employees. At the conclusion of the work day on October 18, 1961, as plaintiff was walking across the parking lot to his car, he was struck by the automobile of defendant, who was also leaving work, and severely injured. On such date the parties and their employer were operating under and subject to the Illinois Workmen's Compensation Act, section 5(a) of which provided in pertinent part: "No common law or statutory right to recover damages from the employer *or his employees* for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, shall be available to any employee who is covered by the provisions of this Act, * * *." (Ill. Rev. Stat. 1961, chap. 48, par. 138.5(a); emphasis supplied.) We have construed this section to mean that a common-law action by an employee against a negligent coemployee is precluded if the parties come within the act and the accidental injury arose out of and in the course of the employment. *O'Brien* v. *Rautenbush,* 10 Ill.2d 167; *Rylander* v. *Chicago Short Line Railway Co.* 17 Ill.2d 618.

Within a short time after the occurrence plaintiff filed a common-law action against defendant, whose answer denied the material allegations of the complaint. Some time later, on the occasion of a pretrial conference, defendant

orally raised the defense that plaintiff's sole recovery was under the Workmen's Compensation Act and, when this occurred, plaintiff, to protect himself, filed a claim for compensation benefits against the employer. Still later, on leave granted, defendant formally pleaded as an affirmative defense that the accident on the employer's premises had arisen out of and in the course of the employment of both men; that plaintiff had filed a claim against the employer for compensation benefits, which claim had been settled for $9,469.71 with the approval of the Illinois Industrial Commission; and that under the law of Illinois, (presumably referring to section 5(a),) plaintiff had no common-law action against defendant but was limited to his remedy under the Workmen's Compensation Act.

Answering the affirmative defense, plaintiff admitted that the parties and their employer were operating under the act, but denied that the accident had arisen out of and in the course of the employment of either man and alleged that if section 5(a) was to be construed as barring his common-law action, then its application would deny him due process and equal protection of the law. Additionally, and among other things, the answer alleged that defendant had carried a $25,000 public liability policy on his car; that he, the plaintiff, had a claim against defendant under the terms of the policy; and that to permit section 5(a) to stand as a bar to his common-law action would cause the section to violate the provisions of the State and Federal constitutions which prohibit legislation impairing the obligation of contract. See: Const. of Ill. art. II, sec. 14; Const. of the U.S., art. I, sec. 10.

On the basis of such pleadings, and after an appropriate motion and hearing, the trial court entered judgment for defendant. This appeal by plaintiff has followed and he has renewed the constitutional claims made below.

Plaintiff concedes that the regulation of the employer-employee relationship may be validly accomplished under

the police power of the State. (*Casparis Stone Co.* v. *Industrial Board,* 278 Ill. 77; *New York Central Railroad Co.* v. *White,* 243 U.S. 188, 61 L. ed. 667.) He insists, however, that the extension of the employer-employee relation and the coverage of the Workmen's Compensation Act to occurrences on parking lots after work duties have ceased, and in such a manner to deprive him of his action against a tort feasor, is an arbitrary and unreasonable exercise of the police power which operates to deny him due process and equal protection of the law. Stated otherwise, it is plaintiff's premise that the accident here occurring on the employer's parking lot was totally unconnected with the employer-employee relationship from the standpoint of time, place, risk and causal connection, thus causing the application of the compensation act to be arbitrary and unreasonable. This, as shall be seen, is but another way of saying that the accidental injury did not arise out of and in the course of the employment, a contention which, along with plaintiff's constitutional claim, finds rejection in well-established precedents.

The decision in *Cudahy Packing Co.* v. *Parramore,* 263 U.S. 418, 68 L. ed. 366, decided at a comparatively early stage in the history of the judicial testing of workmen's compensation legislation, supplies the yardstick to be applied to plaintiff's clam of a denial of due process and equal protection of the law. In that case, which presented the question whether the fourteenth amendment prevented the application of the Utah act to an accidental death occurring at a railroad crossing on a public highway that was the sole means of ingress and egress for the employees of a packing plant, it was held, en route to a conclusion that such application was not subject to the constitutional objection, that the guarantees of due process and equal protection are not violated if there is a causal connection between the death or injury and the employment, "* * * a connection substantially contributory, though it need not be the sole or

proximate cause." (See also: *Bountiful Brick Co.* v. *Giles,* 276 U.S. 154, 72 L. ed. 507.) In brief, and based upon the *Parramore* decision, it may be said that the application of a compensation act to a particular death or injury escapes condemnation as arbitrary, capricious or clearly unreasonable, so long as there is some substantial relationship between the employment and the death or injury. As our own act has been phrased and construed, this relationship exists where the death or injury is one arising out of and in the course of the employment, and thus the efficacy or inefficacy of plaintiff's constitutional claim necessarily depends on whether the injury here was one arising out of and in the course of the employment.

The phrases "arising out of" and "in the course of" the employment, which are used conjunctively in our act, (Ill. Rev. Stat. 1961, chap., 48, par. 138.2; see also: *Christian* v. *Chicago & Illinois Midland Railway Co.* 412 Ill. 171, 175,) have been repeatedly defined by our courts with the result that many guiding principles have been established. The words "arising out of" refer to the origin or cause of the accident and presuppose a causal connection between the employment and the accidental injury, (*Ceisel* v. *Industrial Com.* 400 Ill. 574; *Math Igler's Casino, Inc.* v. *Industrial Com.* 394 Ill. 330,) and in order for an injury to come within the act it must have had its origin in some risk connected with, or incidental to, the employment, so that there is a causal connection between the employment and the injury. (*Dunham Co.* v. *Industrial Com.* 16 Ill.2d 102; *Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294.) The injury need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence. (*Permanent Construction Co.* v. *Industrial Com.* 380 Ill. 47.) Ordinarily, an injury does not arise out of the employment unless the danger causing the injury is peculiar to the work and the

risk is not one to which the public generally is subjected, (*Lagomarcino-Grupe Co. of Iowa* v. *Industrial Com.* 383 Ill. 95;) however, if an employee is exposed to a risk common to the general public to a greater degree than other persons by reason of his employment, the accidental injury is said to arise out of his employment. *Payne and Dolan* v. *Industrial Com.* 382 Ill. 177; *Hinckley & Schmitt* v. *Industrial Com.* 391 Ill. 577; *Cudahy Packing Co.* v. *Parramore,* 263 U.S. 418, 68 L. ed. 366.

The words "in the course of the employment," on the other hand, refer to time, place and circumstances under which the accident occurred, (*Christian* v. *Chicago & Illinois Midland Railway Co.* 412 Ill. 171; *Northwestern University* v. *Industrial Com.* 409 Ill. 216,) and it is stated generally that an accidental injury is received in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto. (*Loyola University* v. *Industrial Com.* 408 Ill. 139; *Great Atlantic and Pacific Co.* v. *Industrial Com.* 347 Ill. 596.) At the same time, however, due to the fact that employment contemplates an employee's entry upon and departure from the employer's premises as much as it contemplates his working there, employment is not limited to the exact moment when an employee begins or ceases his duties, but necessarily includes a reasonable time before commencing and after concluding actual employment. *Wabash Railway Co.* v. *Industrial Com.* 294 Ill. 119; *Cudahy Packing Co.* v. *Parramore,* 263 U.S. 418, 68 L. ed. 366.

Whether the record here be tested by the foregoing principles, or by the specific decisions which have applied them, we are impelled to the conclusion that the accidental injury suffered by plaintiff did arise out of and in the course of the employment of himself and his coemployee. Adhering to what appears to be the distinct majority view in this

country, (see: 66 A.L.R. 1406, 1413-1417; 28 A.L.R. 1408, 1409; 58 Am. Jur., Workmen's Compensation, sec. 221,) the courts of this jurisdiction have consistently concluded that an injury accidentally received on the premises of the employer by an employee going to or from his actual employment by a customary or permitted route, within a reasonable time before or after work, is received in the course of and arises out of the employment. (*Indian Hill Club* v. *Industrial Com.* 309 Ill. 271; *Union Starch and Refining Co.* v. *Industrial Com.* 344 Ill. 77; *Wabash Ry Co.* v. *Industrial Com.* 294 Ill. 119; *Western Coal and Mining Co.* v. *Industrial Com.* 296 Ill. 408; *Biggs* v. *Farnsworth,* 336 Ill. App. 417; *Cunningham* v. *Metzger,* 258 Ill. App. 150.) More recently, in both *DeHoyos* v. *Industrial Com.* 26 Ill.2d 110, and *Carr* v. *Industrial Com.* 26 Ill.2d 347, we have aligned ourselves with those jurisdictions holding that the same result obtains with respect to accidental injuries received on parking lots maintained by employers for the use of their employees. *E.g. Murphy* v. *Miettinen,* 317 Mass. 633, 59 N.E.2d 252; *Rogers' Case,* 318 Mass. 308, 61 N.E.2d 341; *DeWar* v. *General Motors Corp.* 19 N.J. Misc. Rep. 297, 19 A.2d 194; *E. I. Dupont De Nemours & Co.* v. *Redding,* 194 Okla. 52, 147 P.2d 166; *Krovosucky* v. *Indus. Com.* 74 Ohio App. 86; 57 N.E.2d 607.

To sustain his claim of arbitrariness and unreasonableness in the face of these precedents plaintiff advances two arguments. First, that the use of the parking lot is in no manner connected with the employer-employee relationship, and, second, that employees using the lot are exposed to no greater perils than the general public. We do not agree with either contention. As to the first, it is more than clear that the parking lot was provided and used as an incident of the employment. The lot was used as an adjunct of the employer's plant, it was furnished and maintained by the employer to facilitate arrival and departure from work, and it was contemplated that employees would use the lot in going to

and from their employment. As to the second contention, it would be sufficient to say there is no showing that the public used the lot or were exposed to its perils. But even if such a showing had been made, it would be of little avail to plaintiff. The regular and continuous use of the parking lot by employees, most particularly at quitting time when there is a mass and speedy exodus of the vehicles on the lot, would result in a degree of exposure to the common risk beyond that to which the general public would be subjected. *Cf. Biggs* v. *Farnsworth,* 336 Ill. App. 417; *Cunningham* v. *Metzger,* 258 Ill. App. 150; *Murphy* v. *Miettinen,* 317 Mass. 633, 59 N.E.2d 252.

We conclude that the accidental injury here did arise out of and in the course of the employment and that our act, as so construed and applied, does not deprive plaintiff of due process or equal protection of law.

What we have said also disposes of a contention that the application of the act to such accidents places an unfair burden upon industry, leaving for consideration the claim that section 5(a) is legislation which impairs and restricts the obligation of contract. Restating plaintiff's theory briefly, he sees defendant's liability policy as a third party beneficiary contract for his benefit and asserts that the bar to a common-law action imposed by section 5(a) restricts and impairs the obligation of that contract. No convincing argument or applicable authority has been advanced in support of this proposition and we believe it fails in many respects. The provisions of the insurance contract have not been brought to our attention. But even assuming that it gives an injured party some right that may be enforced against the insurer before liability has been established in a suit brought by him against the insured, (see: *Pohlman* v. *Universal Mutual Casualty Co.* 12 Ill. App. 2d 153, 160; *Hannig* v. *Hartford Accident & Indemnity Co,* 342 Ill. App. 539,) it is enough to say his constitutional claim is not well founded under the circumstance that the contract in

question was not in existence when the Workmen's Compensation Act was enacted. As was succinctly stated in *People* v. *Ottman,* 353 Ill. 427, 430: "The law existing at the time a contract is made becomes a part of it. The constitutional provision denying the power to pass any law impairing the obligation of a contract has reference only to a statute enacted after the making of a contract." See also: *Burdick* v. *People,* 149 Ill. 600; *Pinney* v. *Nelson,* 183 U.S. 144, 46 L. ed. 125; *Oshkosh Waterworks Co.* v. *City of Oshkosh,* 187 U.S. 437, 47 L. ed. 249; 11 I.L.P., Constitutional Law, secs. 281, 282.

We conclude that the judgment of the circuit court of Cook County was correct, and it is therefore affirmed.

*Judgment affirmed.*